UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RENARDO WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Docket No. 1:14-cv-539-NT |
| | ) |
| DAVID J. CUTLER, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER ON MOTION TO DISMISS

This matter comes before the Court on Defendants Dennis Shipman, Michael Tausek, Rodney Bouffard, and Joseph Fitzpatrick's motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss (ECF No. 27). For the reasons stated below, the Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

### I.  The Complaint

The Plaintiff's Amended Complaint stems from an incident that occurred while Williams was incarcerated at the Maine State Prison (the "**MSP**"). The Amended Complaint alleges the following facts.[1] On December 24, 2012, Williams was at a doughnut and coffee giveaway at the MSP. Am. Compl. ¶ 12 (ECF No. 23). Williams and another inmate stepped into the pool room where it was not as loud. Am. Compl.

---

[1]  The factual allegations in the Amended Complaint are accepted as true for purposes of this motion. *See Mulero-Carrillo v. Román-Hernández*, 790 F.3d 99, 104 (1st Cir. 2015).

¶ 12. MSP Captain David Cutler followed Williams into the pool room with one or two rookie correctional officers. Am. Compl ¶ 13. Williams asked Captain Cutler what was going on and why he was being harassed. Captain Cutler told Williams to put his hands up against the wall. Williams complied and Captain Cutler handcuffed him. Am. Compl. ¶ 14. Captain Cutler then led Williams into an office where Captain Cutler physically assaulted the handcuffed Williams. Am. Compl. ¶¶ 15-16. Williams subsequently filed a grievance with the Maine Department of Corrections based on the assault. Am. Compl. ¶ 21. The grievance was denied initially because it was not on the proper form, even though the form had been provided by the Maine Department of Corrections. Am. Compl. ¶ 22. When Williams resubmitted the grievance on the "correct" form, Williams was told that it was denied because he could not file two grievances on the same matter. Am. Compl. ¶ 23.

On January 6, 2013, Williams was transferred from the MSP to the Maine Correctional Center (the "**MCC**"). Am. Compl. ¶ 29. Shortly after his arrival at the MCC, Williams was, without cause, placed on the MCC "Watch List." Am. Compl. ¶ 30. As a result of being placed on the "Watch List," Williams was subject to heightened security measures including increased searches and interference with his mail. Am. Compl. ¶ 31. In April of 2013, Williams filed a second grievance, this time challenging his placement on the "Watch List" at MCC. Am. Compl. ¶ 33. In response to the second grievance, Williams received a memo from Shipman, the Grievance Review Officer, advising that the MCC would not tell Williams why he was placed on the "Watch List" and dismissing the grievance as untimely because Williams was first

affected by the "Watch List" more than fifteen days before filing his grievance. Am. Compl. ¶ 34.

The Plaintiff's Amended Complaint sets forth eight separate claims.[2] The Plaintiff does not make clear which counts pertain to which Defendants. The "wherefore" clauses of Counts One, Two, Three, Three-A, Four, and Five seek relief from "Defendants," although the allegations of those counts do not appear to involve all of the Defendants. Counts Six and Five-A seek relief only from Defendant Cutler. Based on the allegations of wrongdoing contained in the counts and the information contained in the caption of the Amended Complaint, the Plaintiff appears to be asserting the following counts against the following Defendants:

- Count One asserts a claim against Defendant Cutler, in his individual capacity, for an alleged assault. Count One is brought under 42 U.S.C. § 1983 for violation of the Plaintiff's rights to be free from assault, excessive force, cruel and unusual punishment and his rights to equal protection and substantive due process under the Fourth,[3] Eighth, and Fourteenth Amendments. In Count One, the Plaintiff seeks a $300,000 judgment plus punitive damages, attorneys' fees, interest, costs and such other relief as is just and proper.

- Count Two, also brought under 42 U.S.C. § 1983, asserts a claim against Defendant Shipman, in his individual and official capacity, and against unknown administrators at the MCC, in their individual and official

---

[2] There are two Count Three's in the Amended Complaint. I will refer to the second Count Three as Count Three-A. There are also two Count Five's. I will refer to the second Count Five as Count Five-A.

[3] The Fourth Amendment does not protect a post-conviction inmate. The Amended Complaint does not aver that the Plaintiff is a pretrial detainee, and I assume, given that he was incarcerated at the Maine State Prison and is currently incarcerated at the Maine Correctional Center, that the Plaintiff is a post-conviction inmate protected by the Eighth rather than the Fourth Amendment. *See Richman v. Sheahan,* 512 F.3d 876, 882 (7th Cir. 2008) ("[I]f you are beaten to a pulp before you are convicted, your remedy is under the Fourth Amendment; after, under the Eighth Amendment.").

3

capacities. Fairly read, Count Two appears to assert a claim based on retaliation for the exercise of First, Fourth[4] and Fourteenth Amendment rights. Specifically, the Plaintiff asserts that unknown administrators at MCC retaliated against him for filing the grievance against MSP Captain Cutler by placing the Plaintiff on the "Watch List" at MCC. Count Two alleges that Defendant Shipman retaliated against the Plaintiff by denying the Plaintiff's second grievance pertaining to the "Watch List." In Count Two, the Plaintiff demands judgment in the amount of $300,000 and seeks an order enjoining Defendant Shipman "from future retaliatory actions against those who have asserted their constitutional rights." In addition, the Plaintiff seeks punitive damages, attorneys' fees, interest, costs and such other relief as is just and proper.

- Count Three asserts a claim under 42 U.S.C. § 1983 for violation of the Plaintiff's due process rights. Count Three singles out unknown administrators at the MSP for denial of Plaintiff's grievance against Captain Cutler. The Plaintiff repeats his request for $300,000 plus punitive damages. The caption to the Amended Complaint identifies unknown administrators from the MCC but does not name unknown administrators at the MSP as defendants. This appears to be a count without defendants.

- Count Three-A asserts a claim, again under 42 U.S.C. § 1983, for violation of the Plaintiff's[5] equal protection rights. Count Three-A is asserted against Department of Corrections Commissioner Joseph Fitzpatrick, MSP Warden Rodney Bouffard, and MSP Deputy Warden Michael Tausek, all sued solely in their official capacities.[6] Count Three-A alleges that the Plaintiff was singled out for "disparate disciplinary treatment by Captain David Cutler and other Corrections Officers because of his race."[7] Count Three-A asserts

---

[4]   *See supra* n.2.

[5]   The Equal Protection count appears to allege equal protection violations of other inmates' rights as well. Given that the Amended Complaint is styled as an individual (not a representative) action, I construe these allegations merely as providing factual support for the Plaintiff's claim that certain Defendants were aware of other complaints of "disparate disciplinary treatment based upon race and/or color" occurring within the prison system. Am. Compl. ¶ 58.

[6]   The caption to the Amended Complaint identifies Commissioner Fitzpatrick as successor to Joseph Ponte and Warden Bouffard as successor to Warden Patricia Barnhardt. It is unclear from the Amended Complaint when Commissioner Fitzpatrick and Warden Bouffard took over from their predecessors.

[7]   Although the Amended Complaint never asserts the race and/or color of the Plaintiff, I infer that he is a person of color. *See* Am. Compl. ¶ 48 ("Renardo Williams and other individuals of color

4

that the disparate disciplinary treatment of individuals of color in the MSP is a longstanding "custom and practice"; that Commissioners Ponte and Fitzpatrick, Wardens Barnhardt and Bouffard, and Deputy Warden Tausek knew or should have known that corrections officers were violating the rights of inmates of color; and that the official Defendants failed to stop the practice and failed to properly train and supervise correction officers. For relief, the Plaintiff demands "judgment against the Defendants and requests the Court enjoin the Defendants from continuing to allow the long-standing custom and practice of disparate treatment of individuals based on race and/or color to continue at the Maine State Prison, plus costs, attorneys' fees and such other and further relief as this Court deems just and proper." Am. Compl. ¶ 62.

- Count Four asserts a claim for damages for assault and battery against Captain Cutler. Although Count Four seeks relief from "Defendants," it is not apparent to me how any named Defendant other than Captain Cutler could be sued for assault and battery.

- Count Five asserts a claim for damages under the Maine Civil Rights Act, 5 M.R.S.A. § 4682, based on the alleged assault by Captain Cutler. Again, although Count Five seeks relief from "Defendants," the Plaintiff fails to allege how any Defendant other than Captain Cutler would be liable under this Count.

- Count Six asserts a claim of intentional infliction of emotional distress specifically against Captain Cutler.

- Count Five-A asserts a claim of negligent infliction of emotional distress specifically against Captain Cutler.

## II.   The Motion to Dismiss

The State has filed a motion to dismiss all claims against Defendants Shipman, Tausek, Bouffard, and Fitzpatrick. As grounds, the State claims that: (1) the Amended Complaint fails to allege sufficient facts to establish supervisory liability for Defendants Bouffard, Tausek, and Fitzpatrick for the alleged assault on the

---

have been singled out for disparate disciplinary treatment by Captain David Cutler and other Corrections Officers because of their race.").

Plaintiff; (2) the Plaintiff lacks standing to seek injunctive relief; (3) the Plaintiff's claim for injunctive relief against Defendants Tausek and Bouffard was mooted by his transfer to MCC; (4) the Amended Complaint alleges insufficient facts to support a claim of retaliation by Defendant Shipman; (5) the claim against Defendant Shipman in his personal capacity is barred because the Plaintiff does not allege that he suffered any physical injury as a result of Defendant Shipman's actions; and (6) the punitive damages claims against Defendants Shipman, Tausek, Bouffard and Fitzpatrick are barred by 18 U.S.C. § 3626 of the Prison Litigation Reform Act (the "**PLRA**").

## LEGAL STANDARD

### A.  The Rule 12(b)(6) Standard

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). A defendant may challenge a complaint for "failure to state a claim upon which relief can be granted" for falling short of this Rule 8 standard. Fed. R. Civ. P. 12(b)(6). Following *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the First Circuit has instructed:

> To evaluate the sufficiency of a complaint under Rule 8, we first must distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited). We then must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable.

6

*Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015) (internal quotations and citations omitted). The Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### B. Supervisory Liability

It is well settled that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Id.* at 676. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* "[A] supervisor may not be held liable for the constitutional violations committed by his or her subordinates, unless there is an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor . . . such that the supervisor's conduct led inexorably to the constitutional violation." *Soto-Torres v. Fraticelli*, 654 F.3d 153, 158 (1st Cir. 2011) (citation and internal quotations omitted).

"Where the claim is invidious discrimination . . . the plaintiff must plead and prove that the defendant acted with discriminatory purpose." *Iqbal*, 556 U.S. at 676. To survive a motion to dismiss, a plaintiff "must plead sufficient factual matter to show that [the defendants] adopted and implemented the detention policies at issue . . . for the purpose of discriminating on account of race . . . ." *Id.* at 677. The Supreme Court in *Iqbal* rejected the argument that "a supervisor's mere knowledge

of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Id.*

The First Circuit has repeatedly applied *Iqbal* to affirm the dismissal of complaints which do nothing more than parrot the standard for supervisory liability in the § 1983 context. *E.g., Sanchez v. Pereira-Castillo,* 590 F.3d 31, 49-50 (1st Cir. 2009) (complaint's allegations that administrative defendants were "responsible for ensuring that the correctional officers under their command followed practices and procedures [that] would respect the rights and ensure the bodily integrity of Plaintiff" rejected as mere legal conclusion); *Feliciano-Hernandez v. Pereira-Castillo,* 663 F.3d 527, 534 (1st Cir. 2011) (allegations that the defendants "failed in their duty to assure adequate monitoring, disciplining, evaluating, training and supervising any and all personnel under their charge" were merely asserting legal conclusions.); *Soto-Torres,* 654 F.3d at 159 (assertions that defendant "'was the officer in charge during the incident" and "participated in or directed the constitutional violations alleged herein, or knew of the violation[s] and failed to act to prevent them" were "plainly insufficient" to support a theory of supervisory liability post-*Iqbal*).

## DISCUSSION

### I. The Claims Against Defendants Bouffard, Tausek, and Fitzpatrick

The State asserts that the Amended Complaint contains insufficient factual allegations to state a claim for relief based on supervisory liability against Defendants Bouffard, Tausek, and Fitzpatrick. Only Count Three-A involves

8

Defendants Bouffard, Tausek, and Fitzpatrick, and Count Three-A is the only count which does not assert a claim for monetary damages.[8]

In Count Three-A, the Plaintiff claims that his right to equal protection of the laws was denied because of his race. He asserts that he and other individuals of color have been singled out for disparate disciplinary treatment by Captain Cutler and other correctional officers. The Amended Complaint asserts the following:

- Ten inmates from the MSP advised the Portland NAACP that they were singled out for disparate disciplinary treatment because of their race and/or color. Am. Compl. ¶ 49.

- In or around June of 2013, the Commissioner of the Department of Corrections ("**DOC**") and the Warden of the MSP agreed on a protocol that would have allowed the NAACP to interview prisoners who were subject to disparate disciplinary treatment because of their race and/or color, but the State's Attorney General's office blocked the interviews from occurring in an effort to ensure that there would be insufficient factual allegations upon which to premise claims for disparate treatment based on race. Am. Compl. ¶¶ 50, 51.

- Upon information and belief, at least two individuals have been subject to racially derogatory comments and subject to disciplinary treatment, including assaults and solitary confinement because of race and/or color. Am Compl. ¶ 54.

- Upon information and belief, in the past three years, the DOC has received several complaints and/or grievances from MSP inmates for disparate disciplinary treatment ranging from solitary confinement to assaults. Am. Compl. ¶ 55.

- Over the past three years, the NAACP repeatedly has advised the Commissioner of the DOC, the Warden at the MSP, and the Deputy Warden

---

[8] The Eleventh Amendment bars § 1983 suits against states and state agencies. 4 Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation*, § 9:49 (2015) ("Unlike a local government, a state cannot be sued in its own name under § 1983 either in federal court or state court, and state officials similarly cannot be sued in their official capacities for damages either in federal court or in state court."). The Plaintiff confirms in his opposition that he is only seeking prospective injunctive relief against Defendants Bouffard, Tausek, and Fitzpatrick, and this case is governed by *Ex Parte Young*, 209 U.S. 123 (1908). Pl.'s Opp'n to Defs.' Mot. to Dismiss 5 ("**Pl.'s Opp'n**") (ECF No. 33).

    at the MSP[9] that individuals of color are being singled out for disparate treatment based upon race and/or color. Am. Compl. ¶ 56.

- Over the past ten years State Officials, including a former Commissioner, have acknowledged the probability of disparate disciplinary treatment based on race and/or color. Am. Compl. ¶ 57.

- The official Defendants and Warden Barnhardt "knew, and/or should have known, that Correction officers under their authority and control" were violating the civil rights of inmates of color. Am. Compl. ¶ 60.

The allegations summarized above are sufficient to establish that Defendants Fitzpatrick, Bouffard and Tausek were aware of complaints at the MSP that corrections officers were dispensing disparate disciplinary treatment based on race, but it does nothing to establish that the official Defendants shared the purpose of their subordinates. As *Iqbal* made clear, a complaint must plausibly allege that the official Defendants acted or omitted action with the purpose of discriminating against inmates based on their color.[10] "[A] supervisor's mere knowledge of his subordinate's discriminatory purpose" is insufficient. *Iqbal*, 556 U.S. at 677.

---

[9]     The State points out that Commissioner Fitzpatrick and Warden Bouffard were sued as successors to Commissioner Joseph Ponte and Warden Patricia Barnhardt and argues that there is no allegation that any discriminatory practices are continuing after the changes in personnel. Mot. to Dismiss 6; *see Mayor of City of Phila. v. Educ. Equal. League*, 415 U.S. 605, 622 (1974). Neither of the parties state when Defendants Fitzpatrick and Bouffard took over, so it is impossible for me to evaluate this argument. *See Feliciano-Hernandez v. Pereira-Castillo,* 663 F.3d 527, 535-36 (1st Cir. 2011) (official defendants who were not yet in office could not plausibly have been put on notice of plaintiff's allegations).

[10]     Like the case at hand, Iqbal alleged that his right to equal protection was violated. Iqbal was a Pakistani detainee who alleged he was subjected to exceptionally harsh treatment in custody based on his race, religion, or national origin. Regardless of whether *Iqbal* has created a new restrictive rule for supervisory liability in all types of cases, at least when it comes to *discrimination* claims, *Iqbal* makes clear that "knowledge and acquiescence" will no longer suffice. *See* Rosalie Berger Levinson, *Who Will Supervise the Supervisors? Establishing Liability for Failure to Train, Supervise, or Discipline Subordinates in a Post-*Iqbal*/*Connick *World*, 47 Harv. C.R.-C.L. L. Rev. 273, 289-90 (2012) ("Most courts have reasoned that, at a minimum, *Iqbal* means that the supervisor must have the requisite state of mind for the underlying constitutional rights violation. Because Iqbal alleged

The remainder of the allegations in Count Three-A assert that:

- Disparate disciplinary treatment of individuals of color in the Maine State Prison is a longstanding custom and practice that has become part of the culture of the prison. Am. Compl. ¶ 59.

- The official Defendants failed to take action sufficient to stop the prison guards and officials. Am. Compl. ¶ 58.

- The official Defendants failed to properly train and supervise corrections officers on the law and policies and procedures concerting the civil rights of inmates. Am. Compl. ¶ 61.

As the First Circuit has instructed, however, allegations like these that merely parrot legal conclusions, are to be set aside in a post-*Iqbal* world. Because the Plaintiff has failed to allege that the official Defendants shared the discriminatory animus of their subordinates, and because there is insufficient factual support to establish the necessary affirmative link between the behavior of a subordinate and the action or inaction of the supervisor, Count Three-A fails to state a claim against Defendants Fitzpatrick, Bouffard and Tausek.[11]

## II.   The Claims Against Defendant Shipman

The Plaintiff alleges that Defendant Shipman placed him on the "Watch List" at the MCC in retaliation for filing a grievance against Captain Cutler. Am. Compl.

---

discriminatory treatment in violation of the Fifth Amendment, which mandates a showing of intent he was required to prove that Mueller and Ashcroft acted with the intent to discriminate."); s*ee also* Nahmod, *supra* note 8, at § 3:97 n.3 (arguing that "the Court got it right in *Iqbal*" by requiring a plaintiff to establish that a supervisor had the mens rea necessary for the underlying constitutional violation—for example, deliberate indifference for an Eighth Amendment violation and purposeful discrimination for a Fourteenth Amendment equal protection violation).

[11]   Because I conclude that the Amended Complaint fails to state a claim against the Official Defendants, I do not address the State's additional arguments in favor of dismissing these parties.

¶¶ 37, 39. The Plaintiff further alleges that because he was on the "Watch List" he was subjected to heightened security measures including increased searches and interference with his mail. Am. Compl. ¶ 31. The Plaintiff also claims that Defendant Shipman denied his grievance about being placed on the "Watch List" as untimely because he had filed a grievance against Captain Cutler. Am. Compl. ¶ 36. The Plaintiff contends that his placement on the "Watch List" and the denial of his grievance pertaining to the "Watch List" violated his First, Fourth, and Fourteenth[12] Amendment rights.

The State moves to dismiss the Counts against Defendant Shipman on the grounds that the Amended Complaint fails to allege facts sufficient to support the claim. The State also argues that claims against Defendant Shipman in his personal capacity are barred under the PLRA because the Plaintiff failed to allege facts showing that he suffered any physical injury as a result of Defendant Shipman's actions. Finally, the State argues that punitive damages against Defendant Shipman are also barred by the PLRA.

### A. Failure to State a Claim Upon Which Relief Can be Granted

The State concedes that an inmate's right to file a grievance over prison conditions is protected by the First Amendment. Mot. to Dismiss 9 (citing *Brown v. Corsini,* 657 F. Supp. 2d 296 (D. Mass. 2009)). In order to establish a claim for retaliation based on the exercise of rights protected by the First Amendment, a

---

[12] The parties did not mention the Fourth or Fourteenth Amendments in their briefing. Accordingly, I will not address them here.

12

plaintiff must allege facts sufficient to make out a claim that he engaged in protected activity; that he was subjected to adverse action; that the state took the adverse action; and that there is a causal link between the protected conduct and the adverse action. *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011). An adverse action in a First Amendment retaliation case is one that "viewed objectively . . . would have a chilling effect on [the plaintiff's] exercise of First Amendment rights," *Barton v. Clancy*, 632 F.3d 9, 29 & n.19 (1st Cir. 2011), or that "would deter a reasonably hardy person from exercising his or her constitutional rights." *D.B. v. Esposito*, 675 F.3d 26, 43 n.11 (1st Cir. 2012). The State argues that the adverse action alleged by the Plaintiff was not "sufficiently severe to deter a prisoner of ordinary firmness from the exercise of his constitutional right to complain about conditions of confinement." Mot. to Dismiss 10. I disagree. Accepting as true the allegations in the Amended Complaint, I find it plausible that being subjected to increased searches and interference with mail might deter a reasonably hearty inmate from exercising his constitutional rights.

**B. Claims against Defendant Shipman in his Personal Capacity**

The PLRA section on "Suits by Prisoners" contains a subsection labeled "Limitation on recovery." 42 U.S.C. § 1997e(e). That subsection instructs: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." *Id.* The scope of this limitation is the subject of a circuit split, specifically "on whether § 1997e(e) applies to bar compensatory damages only (leaving the availability to recover

13

nominal or punitive damages), or whether the statutory provision applies to constitutional claims at all." *Cryer v. Spencer*, 934 F. Supp. 2d 323, 336 (D. Mass. 2013) (collecting cases). The First Circuit has not weighed in directly, but has permitted a prisoner's First Amendment § 1983 claim to proceed without an allegation of physical injury where he requested nominal and punitive damages in addition to compensatory damages. *Kuperman v. Wrenn*, 645 F.3d 69, 73 n.5 (1st Cir. 2011). Courts in this district have followed *Kuperman*'s forecasting. *See, e.g., Robinson v. Landry*, No. 2:15-cv-58-DBH, 2015 WL 4077297, at *2 (D. Me. July 6, 2015) (dismissing § 1983 First Amendment claim where prisoner sought only monetary damages for anxiety and emotional distress without alleging any physical injury); *Ayotte v. Barnhart*, 973 F. Supp. 2d 70, 93 (D. Me. 2013) (declining to grant state's summary judgment motion on § 1983 First Amendment claim where prisoner sought both compensatory damages without physical injury *and* punitive damages).

In his First Amendment retaliation claim articulated in Count Two of his Amended Complaint, Williams requests: (1) "judgment against the Defendants in the amount of $300,000"; (2) an injunction against Shipman from committing "future retaliatory actions against those who have asserted their constitutional rights"; (3) punitive damages; (4) attorneys' fees; (5) interest; (6) costs and "such other and further relief as this Court deems just and proper." Am. Compl. ¶ 41. I interpret Williams's closing catch-all request to include nominal damages.

At this point in the litigation, I need not decide whether § 1997e(e) precludes compensatory damages for Williams's § 1983 First Amendment retaliation claim. In

14

addition to his request for $300,000 in compensatory damages, Williams has also requested punitive and nominal damages. Am. Compl. ¶ 41. Following *Kuperman*, his request for putative and nominal damages "keep[s] his claim[ ] alive." 645 F.3d at 69 n.5. Through a Rule 12(b)(6) lens, the State has not shown that Williams has failed to "state a claim upon which relief can be granted."[13]

### C. Claims for Punitive Damages

The PLRA includes requirements for courts granting prospective relief in civil cases involving prison conditions. Such relief "shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1)(A). "The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id*. The court shall further "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id*. "Prospective relief" in this context is "all relief other than compensatory monetary damages." 18 U.S.C. § 3626(g)(7).

The State points to this part of the PLRA as a reason to bar Williams's claim for punitive damages. Mot. to Dismiss 12-13. Section 3626(a)(1)(A) dictates the standard courts must follow when deciding whether to grant or approve prospective relief. It is too early to evaluate how that standard will apply in this case, and

---

[13] I also note that Williams is not seeking relief for mental or emotional injury on his First Amendment retaliation claim. Pl.'s Opp'n 11. I thus question whether § 1997e(e), which limits when damages for mental or emotion injury are available, will ultimately apply to this claim at all.

15

certainly too early to say that I would be unable to grant or approve relief that meets § 3626(a)(1)(A)'s requirements. Right now, this case consists of allegations; there has been no finding of liability (or even any discovery). Section 3626(a)(1)(A) does not provide a basis for dismissal.[14]

## CONCLUSION

For the reasons stated above, Defendants Rodney Bouffard, Michael Tausek, Joseph Fitzpatrick, and Dennis Shipman's motion to dismiss (ECF No. 27) is **GRANTED IN PART** and **DENIED IN PART**. The motion to dismiss Defendants Rodney Bouffard, Michael Tausek, and Joseph Fitzpatrick from this suit is **GRANTED**. The motion to dismiss Dennis Shipman from this suit is **DENIED**.

SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 11th day of March, 2016.

---

[14] In addition, the Rule 12(b)(6) question is whether Williams has failed "to state a claim upon which relief can be granted." So picking off one type of relief requested—here, punitive damages—while other types of requested relief remain, does not show a failure to state a claim under Rule 12(b)(6).